IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAVONDA DARMOND, | ) | CASE NO. 1:12 CV 1990 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

**A.    Nature of the case and proceedings**

Before me[1] is an action by Lavonda Darmond under 42 U.S.C. § 405(g) for judicial

review of the final decision of the Commissioner of Social Security denying her application

for supplemental security income.[2] The Commissioner has answered[3] and filed the transcript

of the administrative record.[4] Under my initial[5] and procedural[6] orders, the parties have

---

[1] ECF # 26. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 14.

[4] ECF # 15 and 16.

[5] ECF # 5.

[6] ECF # 19.

briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

**B.      Background facts and decision of the Administrative Law Judge ("ALJ")**

This case involves the review of a decision by an ALJ following a remand of the case by the Appeals Council. As the ALJ noted, in the remand order the Appeals Council "directed the [ALJ] to obtain updated medical records, to give further consideration to the claimant's maximum residual functional capacity during the entire period at issue, evaluate the claimant's mental impairments in accordance with 20 CFR 416.920a, and obtain supplemental evidence from a vocational expert."[11]

The ALJ, whose decision became the final decision of the Commissioner, found that Darmond had the following severe impairments: seizure disorder, bipolar disorder, anxiety, post-traumatic stress disorder with borderline traits, obsessive-compulsive disorder, and borderline intellectual functioning (20 CFR 416.920(c)).[12]

---

[7] ECF # 23 (Commissioner's brief); ECF # 22 (Darmond's brief); ECF # 24 (Darmond's reply brief).

[8] ECF # 23-1 (Commissioner's charts); ECF # 22-1 (Darmond's charts).

[9] ECF # 18 (Darmond's fact sheet).

[10] ECF ## 32 (minutes), 33 (oral argument transcript).

[11] Transcript of proceedings ("Tr.") at 15.

[12] *Id.* at 17.

After concluding that the relevant impairments did not meet or equal a listing,[13] the

ALJ made the following finding regarding Darmond's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform a full range of work
> at all levels but with the following nonexertional limitations: she cannot climb
> ladders/ropes/scaffolds; she must avoid hazards such as dangerous machinery
> and unprotected heights; she can perform simple and routine tasks not in a fast
> paced production environment (such as an assembly line); she is able to
> engage in superficial interaction with co-workers; she would be able to
> communicate with the general public infrequently but not on a daily basis as
> part of her job duties.[14]

After deciding that Darmond has no past relevant work, the ALJ further noted that

Darmond's "ability to perform work at all exertional levels has been compromised by

nonexertional limitations."[15] Accordingly, the ALJ asked a hypothetical question setting forth

the RFC finding quoted above to the vocational expert at the hearing, inquiring whether  a

significant number of jobs existed locally and nationally that Darmond could perform.[16]

Based on the VE's testimony, that given Darmond's RFC and other vocational factors that

there were sufficient jobs in the local and national economy at the medium to light exertional

levels that Darmond could perform, the ALJ then found Darmond not under a disability.[17]

---

[13] *Id.* at 18-19.

[14] *Id.* at 19.

[15] *Id.* at 25.

[16] *Id.*

[17] *Id.* at 25-26.

## C.    Issues on judicial review

Darmond asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Darmond presents three issues for judicial review:

- The ALJ adopted an RFC without exertional limitations but including some postural, environmental, and mental limitations. In support of this RFC, the ALJ did not assign any weight whatsoever to the opinion of a treating seizure disorder specialist. He did, however, assign weight and articulate with respect to a consulting examining psychologist and a therapist. Did the ALJ properly analyze and articulate with respect to the relevant medical sources as a predicate to the RFC finding?

- Darmond's counsel posed several hypotheticals to the VE incorporating limitations consistent with the opinions of the treating physician, consulting examining psychologist, and treating therapist. The VE testified that such limitations would make Darmond unemployable. The ALJ rejected the VE's answers based on counsel's hypotheticals and relied upon the VE's positive response to a hypothetical incorporating the ultimate RFC finding. Does substantial evidence support the step five finding based upon the VE's response to the ALJ's hypothetical?

- The ALJ found that Darmond's impairments did not meet the listing for mental retardation in § 12.05C. Darmond had IQ scores that met the requirements of § 12.05C. Without discussing those scores, the ALJ found Darmond did not meet the listing because of evidence that she could function above the listing level. Is the step three finding supported by substantial evidence?

For the reasons that follow, I will conclude that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must be reversed and the matter remanded for further proceedings.

-4-

# Analysis

## A.    Standards of review

### 1.    *Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable

to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[18]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds

could reach different conclusions on the evidence. If such is the case, the Commissioner

---

[18] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

survives "a directed verdict" and wins.[19] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[20]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2. *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[21]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[22]

---

[19] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[20] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[21] 20 C.F.R. § 416.927(d)(2), applicable to supplemental security income applications. The substantially similar regulation applicable to disability insurance benefits applications is 20 C.F.R. § 404.1527(d)(2).

[22] *Id.*

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[23] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[24]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[25] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[26] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[27] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[28]

In *Wilson v. Commissioner of Social Security*,[29] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in

---

[23] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[24] *Id.*

[25] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[26] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[27] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[28] *Id.* at 535.

[29] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

the context of a disability determination.[30] The court noted that the regulation expressly contains a "good reasons" requirement.[31] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[32]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[33] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[34] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[35] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight

---

[30] *Id.* at 544.

[31] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[32] *Id.* at 546.

[33] *Id.*

[34] *Id.*

[35] *Id.*

to a treating physician's opinion created a substantial right exempt from the harmless error rule.[36]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[37] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[38] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[39] *Blakley v. Commissioner of Social Security*,[40] and *Hensley v. Astrue*.[41]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[42] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[43] These factors are expressly set out in 20 C.F.R. § 416.927(c)(2). Only if the ALJ decides not to give the treating source's

---

[36] *Id.*

[37] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (2013).

[38] *Id.* at 375-76.

[39] *Rogers*, 486 F.3d at 242.

[40] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[41] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[42] *Gayheart*, 710 F.3d at 376.

[43] *Id.*

opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 416.927(c)(2)(i)-(ii), (3)-(6).[44] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[45]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[46] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[47] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(c)(i)-(ii), (3)-(6) of the regulations,[48] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[49] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[50]

But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.

---

[44] *Id.*

[45] *Rogers*, 486 F.3d at 242.

[46] *Gayheart*, 710 F.3d at 376.

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.*

To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[51]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[52] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[53] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[54] or that objective medical evidence does not support that opinion.[55]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes

---

[51] *Id.*

[52] *Rogers*, 486 F.3d 234 at 242.

[53] *Blakley*, 581 F.3d at 406-07.

[54] *Hensley*, 573 F.3d at 266-67.

[55] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[56] The Commissioner's *post hoc* arguments on judicial review are immaterial.[57]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 927(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[58]

- the rejection or discounting of the weight of a treating source without assigning weight,[59]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[60]

---

[56] *Blakley*, 581 F.3d at 407.

[57] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

[58] *Blakley*, 581 F.3d at 407-08.

[59] *Id.* at 408.

[60] *Id.*

-12-

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[61]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[62] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[63]

The Sixth Circuit in *Blakley*[64] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[65] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[66]

In *Cole v. Astrue*,[67] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently

---

[61] *Id.* at 409.

[62] *Hensley*, 573 F.3d at 266-67.

[63] *Friend*, 375 F. App'x at 551-52.

[64] *Blakley*, 581 F.3d 399.

[65] *Id.* at 409-10.

[66] *Id.* at 410.

[67] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

-13-

deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[68]

**B.     Application of standards**

This case presents three issues that must be addressed in sequential order: (1) the step three finding that Darmond did not meet or equal the mental retardation[69] listing in 12.05C; (2) the predicate finding to step four where the ALJ did not address the opinion of Darmond's treating neurologist in determining her RFC; and (3) the step five finding that jobs existed for a person with Darmond's RFC.

**1.     *Step three***

Here, Darmond essentially argues that the ALJ's analysis is flawed for not addressing her low IQ scores and for "mischaracteriz[ing]" her functional abilities by only referencing present conditions, not those existing before age 22.[70]

Because satisfying a listing at step three yields an automatic finding of disability, the evidentiary standards at this step "are more strenuous than for claims that proceed through

---

[68] *Id.* at 940.

[69] The phrase "intellectual disability" has replaced "mental retardation" in Listing 12.05. 20 CFR §§ 404, 416. Because this case record uses the prior term "mental retardation," in the interests of clarity and consistency, that term will be retained here.

[70] ECF # 22 at 15.

the entire five-step evaluation."[71] In that regard, Darmond would meet the criteria for Listing 12.05C by showing that she had: "(1) significantly subaverage general intellectual functioning with deficits in adaptive functioning prior to age twenty-two; (2) a valid verbal, performance, or full scale IQ of 60 to 70; and (3) another physical or mental impairment imposing an additional and significant work-related limitation of function."[72]

Here, the ALJ focused on the first category – deficits in adaptive functioning before age 22 – and found that because Darmond "attends to her hygiene, performs household chores, shops, drives (prior to seizure restrictions), rides public transportation, is able to manage her money, and is able to complete forms," she had not shown "sufficient functional deficits" to "meet or equal the criteria of listing 12.05."[73]

Darmond asserts that (1) her school record (she was in classes for the learning disabled and quit school before having to repeat the ninth grade), as well as (2) her violent behavior at age 14 that resulted in juvenile detention show that she had deficits in adaptive functioning before age 22.[74] Further, she claims that the evidence cited by the ALJ in support of his finding that she did not have functional deficits mischaracterizes the evidence and

---

[71] *Peterson v. Comm'r of Soc. Sec.*, No. 13-5841, __ F. App'x __, 2014 WL 223655, at *6 (6th Cir. 2014) (citing 20 CFR §§ 416.925(d), 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)).

[72] *Id.* (citations omitted).

[73] Tr. at 19.

[74] ECF # 22 at 13.

relate only to the period after she became 22 – which, she argues, is not relevant to the criteria of the listing.[75]

The Sixth Circuit has never held that poor academic performance or a history of special education classes themselves warrant a finding that a claimant had subaverage intellectual functioning before age 22.[76] Indeed, it is recognized that "adaptive functioning is different from intellectual functioning."[77] In this regard, "neither circumstantial evidence such as school records nor a history of special education combined with adult IQ scores are necessarily enough to demonstrate that a claimant had adaptive functioning deficits before age 22."[78]

Even granting that Darmond's IQ score of below 70 would meet the second prong of the listing,[79] that score, along with a record of attending classes for the learning disabled and dropping out from school rather than repeat ninth grade, does not, as the Sixth Circuit

---

[75] *Id.*

[76] *Peterson*, 2014 WL 223655, at *7 (citing cases).

[77] *Id.*

[78] *Id.* (citations omitted).

[79] I observe that a separate IQ test from the developmental years is not required to establish compliance with Listing 12.05C. Together with the Commissioner, the courts in Sixth Circuit hold that because the listing speaks of deficits that were initially manifested in the developmental period, such initial manifestation need not be directly shown, but may be inferred "when the longitudinal history and evidence of current functioning demonstrate that the impairment existed before the end of the developmental period." *Moses v. Comm'r of Soc. Sec.*, No. 1:12-CV-383, 2014 WL 359677, at * 5 (E.D. Tenn. Feb. 3, 2014) (citing 65 Fed. Reg. 50746, 50772 (Aug. 20, 2000)).

teaches, sufficiently establish deficits in adaptive functioning before age 22. Further, consistent with the analytical approach that proof of conditions existing prior to a claimant reaching age 22 can be inferred from a longitudinal view of conditions existing after age 22, the ALJ's use of evidence of Darmond's functioning now – such as in the list given in the opinion – provides substantial evidence that she had no deficits of adaptive functioning prior to age 22.

Similarly, it is incorrect to argue, as Darmond does, that the ALJ's analysis here is somehow fatally deficient because it considered only whether she had deficits in adaptive functioning but did not address the other two elements of listing.[80] To meet the criteria of Listing 12.05C Darmond has the burden of presenting specific medical findings to show that she meets all three elements of the listing.[81] Thus, as here, the ALJ's finding that she did not have deficits in adaptive functioning before age 22 would be sufficient to preclude her from meeting or equaling the listing.

### 2.    *Predicate RFC finding to step four*

In this matter, it is not disputed that in determining Darmond's RFC the ALJ did not specifically mention or discuss the opinion of her treating neurologist, Deepak Raheja, M.D. Although Darmond also argues here that the ALJ erred in the weight given to the opinion of

---

[80] ECF # 24 at 5.

[81] *Moses*, 2014 WL 359677, at *6.

-17-

non-treating sources,[82] I will address only the treatment afforded to Dr. Raheja's opinion, since that is dispositive.

Dr. Raheja treated Darmond from November, 2004, through January, 2008,[83] and gave an opinion as to her functional capacities in an opinion dated April 9, 2008.[84] In that opinion, he begins by noting that Darmond has been "known to me for three years; sees me for her seizures."[85] He then details that the seizures are generalized, cause Darmond to lose consciousness for 5-10 minutes, occur 1-2 times per week, and do not come with any warning.[86] He further noted that the seizures do not occur at any given time of day and are not precipitated by particular events like stress or exertion.[87] Of significance, he also stated that post-seizure conditions of confusion and exhaustion last for a "few hours" and that the seizures produce incontinence.[88] While observing that medication makes a difference in reducing the frequency of the seizures, he also observed that Darmond cannot afford the

---

[82] ECF # 22 at 10-12.

[83] Tr. at 298, 300-01, 304, 306, 402-03, 411, 420-21, 474-75, 643-44, 663-64.

[84] *Id.* at 659-62.

[85] *Id.* at 659.

[86] *Id.*

[87] *Id.* at 660.

[88] *Id.*

-18-

medication and has no insurance.[89] He further opined that even when she is able to take the medication, it has the side effect of producing lethargy and lack of alertness.[90]

Dr. Raheja then set forth the specific vocational limitations arising out of the clinical findings he previously listed:

- the seizures are likely to disrupt other workers;

- Darmond will need more supervision than an unimpaired worker;

- Darmond cannot work at heights, with power machinery, or operate a car;

- Darmond will need to take unscheduled breaks; and

- Darmond will miss work more than four days a month.[91]

Despite Dr. Raheja's undeniable status as a treating physician, his three-year treating relationship with Darmond, and the detailed work-related limitations set out in his opinion, the ALJ did not acknowledge that opinion, make any determination as to controlling weight of that opinion, assign weight to that opinion, or give any reasons for totally disregarding that opinion.[92] Under *Blakley*, this constitutes reversible error.[93]

---

[89] *Id.*

[90] *Id.* at 661.

[91] *Id.* at 661-62.

[92] Tr. at 24-25.

[93] *Blakley*, 581 F.3d at 407-08.

-19-

The Commissioner contends that the record as a whole contains evidence to show that Dr. Raheja's opinion is inconsistent with his own treatment notes, with other clinical findings, with the findings of the state agency reviewing physicians, and with Darmond's own daily activities – including being seizure-free for months at a time when she was taking her medication.[94] Darmond, for her part, argue that the "ALJ was required to evaluate Dr. Raheja's opinion, not Defendant's counsel."[95] Whatever the merit in the Commissioner's arguments as to the contradictory evidence in the record as whole, Darmond contends, the arguments of the Commissioner's counsel "cannot substitute for the failure of the ALJ to do his own analysis."[96]

The Commissioner here is not making a harmless error argument under any of the recognized harmless error analyses set out by the Sixth Circuit in *Cole*. Indeed, as the recounting of Dr. Raheja's opinion in some detail above makes clear, there is no basis for arguing that this opinion is so patently deficient as to make it incredible.[97] Moreover, the Commissioner has neither adopted an RFC consistent with the opinion nor provided evidence within the ALJ's decision itself from which meaningful judicial review could ascertain good reasons for rejecting or downgrading it.[98] As *Wilson* has long taught, if there is no basis for

---

[94] ECF # 23 at 11-13.

[95] ECF # 24 at 2.

[96] *Id.*

[97] *Cole*, 661 F.3d at 940.

[98] *Id.*

finding harmless error under any of the three approaches recognized in the authority, "substantial evidence alone does not excuse non-compliance with the [good reasons requirement] as harmless error."[99]

As such, there is no basis for finding harmless error in the failure of the ALJ here to deal with the detailed opinion of a treating source, but only an almost textbook case of *post hoc* rationalization.

### 3.    *Step five*

Inasmuch as Darmond has not shown she is entitled to a review of whether she has met or equaled the listing at step three, but has shown that reversible error occurred in fashioning the RFC prior to step four when the opinion of a treating source was not addressed, I find that the arguments raised about the findings at step five – that the RFC did not accurately state her limitations – are premature. Since the matter will need to be remanded for consideration of Dr. Raheja's opinion according to the treating physician rule and good reasons requirement as set out in *Gayheart*, I make no findings now on whether the RFC in this matter or the hypothetical posed to the VE properly stated Darmond's work-related capabilities and limitations.

### Conclusion

For the reasons stated, substantial evidence does not support the finding of the Commissioner that Darmond had no disability. Accordingly, the decision of the

---

[99] *Wilson*, 378 F.3d at 546.

Commissioner denying Darmond supplemental security income is reversed, and the matter

remanded for further proceedings consistent with this opinion.

     IT IS SO ORDERED.


Dated: March 18, 2014                     s/ William H. Baughman, Jr.
                                            United States Magistrate Judge